NICHOLS *v.* SCRANTON STEEL CO.

(*Supreme Court, General Term, First Department.* April 14, 1892.)

**1. SALE—REFUSAL TO MAKE PAYMENTS—ACTION FOR BREACH.**
　　Under a contract for the sale of iron, a certain amount to be delivered each month, payment to be made on a certain day of each month for the delivery of the preceding month, on refusal of the purchaser to pay for the delivery of a certain month, unless released from some part of its obligation under the contract, the seller may sue for price of iron delivered and for damages as to the remainder of the contract without first delivering the remainder of the iron.

**2. SAME—EVIDENCE OF MISTAKE IN CONTRACT.**
　　A complaint alleged a breach by defendant of a contract whereby plaintiff sold and agreed to deliver to defendant a certain amount of iron at a certain rate per month at $23.50 per ton, settlements to be made in cash on the 27th of each month for the previous month's shipments. The answer pleaded as a defense a modified contract, which, after providing that at the request of defendant shipments would be suspended for two months, and time given on payments then due, further provided that settlements for subsequent shipments should be made at $18 per ton on account, unless market price advanced above that figure, then at market price, such settlements to be on account, balances due to be adjusted at termination of contract, plaintiff to accept 4 months' paper if desired, and the question of what abatement, if any, should be made from "market" price, to be left to a referee in case the parties failed to agree. *Held*, that plaintiff could give evidence, by way of reply, that the parties used the word "market" instead of "contract" by mistake. VAN BRUNT, P. J., dissenting.

**3. PLEADING—AMENDMENT AT TRIAL—HARMLESS ERROR.**
　　The allowance of an amendment to the complaint on the trial so as to permit a reformation of the contract was unnecessary, and, no reformation having been provided by the judgment, was at most harmless.

　　Appeal from judgment on report of referee.

　　Action by John A. Nichols against the Scranton Steel Company for breach of contract. Judgment for plaintiff. Defendant appeals. Affirmed.

　　Mr. Bullitt, the arbitrator provided for by the modified agreement set out in the opinion, on a submission to him of how much abatement should be allowed defendant, decided that none should be allowed.

　　Argued before VAN BRUNT, P. J., and O'BRIEN and INGRAHAM, JJ.

　　*Wilson & Wallis,* (*H. Wallis,* of counsel,) for appellant. *Henry P. Starbuck,* for respondent.

O'BRIEN, J. This action was brought to rec)ver (1) the balance of the contract price of a certain quantity of Bessemer pig iron sold and delivered, and partly paid for; (2) the contract price of a certain other quantity of the same iron, sold and delivered, no part of which had been paid for; and (3) the difference between the contract and the market price of a third quantity of the iron, sold, but of which the delivery has been prevented by the repudiation of the contract on the part of the purchaser. The trial resulted in a judgment for the balance due upon the contract and the damages in favor of the plaintiff, from which this appeal is taken.

In view of the amount of testimony taken, the elaborate findings presented by the parties and passed upon, and the opinion of the referee, it will only be necessary for us to state so much of the facts as will present the questions relied upon by the appellant upon this appeal. It is conceded that to a great extent the rights of the parties are to be determined by two agreements entered into between them, one dated December 20, 1889, and the other July 1, 1890. They are as follows:

"CHARLES W. MATTHEWS, METAL BROKER.

"PHILADELPHIA, Dec. 20th, 1889.

"Sold to the Scranton Steel Company, for account of Messrs. Wm. R. Hart & Co., thirty thousand (30,000) tons of Bessemer pig iron, to be run of furnace as nearly as possible equal quantities numbers 1, 2, and 3. For delivery, 1,000 tons in January, 2,000 tons in February, 2,000 in March, and balance in equal monthly proportions during the months of April, May, June, July, August, September, and October, A. D. 1890, and deliverable f. o. b. cars purchaser's works, Scranton, Pa., at twenty-three and a half ($23.50) dollars per ton of 2,240 lbs. Settlements to be made in cash on the twenty-seventh (27) of each month for the previous month's shipments. The above-named iron to contain not over .10 phosphorus, and to be in other respects suitable for the Bessemer process.

[Signed]　　　　　　　　　　 "CHARLES W. MATTHEWS, Broker.
"Accepted by the Scranton Steel Co.,　　 W. W. SCRANTON, President."

Deliveries under this contract were commenced in January, 1890, and continued until July 1, 1890, all iron delivered up to that time having been paid for in full. On July 1, 1890, the contract was modified by an agreement in writing as follows:

"That, on the first day of July, 1890, the said William R. Hart, under said name and style of William R. Hart & Co., made and entered into an agreement in writing with the said the Scranton Steel Company, in words and figures as follows, to wit:

"'AGREEMENT.

"'W. W. SCRANTON,　　　 WALTER SCRANTON,　　　 E. P. KINGSBURY,
　　 President.　　　　　　 Vice-President.　　　　　 Secy. and Treas.
"'The Scranton Steel Company, Manufacturers of Steel Rails. Works at Scranton, Pa.

"'No. 47 Broadway.
"'NEW YORK, July 1st, 1890.

"'Memorandum of understanding between Crane Iron Company and W. R. Hart & Co., of the first part, and Scranton Steel Company, of the second part:

"'First. At the request of Scranton, Crane and Hart will suspend shipments for the next two months, with the exception of about 1,500 tons per month by Hart from Parryville.

"'Second. Scranton will give thirty and sixty days' paper for amounts now due, but will anticipate if possible.

"'Third. Crane and Hart will resume shipments, but making monthly deliveries as light as possible, and, if necessary, not exceeding one-half of amounts specified in contracts, and settlements will be made at the rate of

eighteen dollars per ton on account, from month to month, unless market price should advance above that figure, and then at current rates, such settlements to be taken on account, and balances due to be adjusted at termination of contract. But Hart and Crane Co. will accept, if desired, four months' paper, with privilege of one renewal, and question of what abatement, if any, should be made from market price, to be then settled between the parties, and, if they fail to agree, to be left to the decision of John C. Bullitt, Esq., who shall have power to decide according to what he thinks just, and equitable between the parties.

" 'THE SCRANTON STEEL COMPANY,

" 'W. W. SCRANTON, Prest.' "

Under this July agreement, Hart & Co. undertook to deliver the iron then undelivered in monthly installments, the defendant to pay for each month's shipments at the rate of $18 per ton, or at market rates on account; settlements to be made on the 27th of each month for the prior month's shipments, either in cash or in four months' paper, at the option of the defendant. Deliveries were made until March 9, 1891, which were paid for at the rate of $18 per ton except the deliveries of January, February, and March, 1891. Payment for the January deliveries became due February 27th, which was demanded in March, and refused by the defendant, and thereafter this action was commenced, at which time it is conceded that some 4,800 tons still remained undelivered under the contract. This latter fact of a failure to deliver the full quantity is sought to be made available as a ground of defense to the plaintiff's right to maintain the action at all, it being insisted that until the entire contract was completed no right of action could accrue. It seems to us that this question must be disposed of by a consideration as to whether, upon the evidence, the proof was sufficient to justify the conclusion reached by the referee that there was a breach of the contract first on the part of the defendant. The evidence shows that the defendant refused to make the payments in accordance with the terms of the contract; but, notwithstanding this fact, it is insisted that at most the plaintiff could only maintain an action for the amount then due for iron actually delivered, and could not maintain an action such as this involving a repudiation of the entire contract. It would be a strange rule of law, and one for which we think no support can be found, to hold that for the purpose of justifying defendant's breach of its contract a construction should be placed thereon which, by making each monthly delivery a separate and independent contract, would render it necessary for the plaintiff's assignor to show that he had made each month thereafter a full delivery of the iron contracted for before he could maintain an action thereon, notwithstanding that during this same period the defendant absolutely refused to make any payments of any kind until it got what it wanted, and was insisting upon, viz., a release from some part of its obligations under the contract. We think the law to be settled that no one is required to go on delivering goods after he has been notified by the purchaser that he will not pay for them at the agreed price at the end of the contract. This was practically the defendant's position, and in taking that position it repudiated the contract, and the plaintiff's assignor was not thereafter required, for the purpose of enforcing his rights thereunder, to continue deliveries when he had been notified that he would not be paid therefor. This consideration, we think, disposes of the question presented by the appellant as to the action having been prematurely brought.

It is insisted, however, that, even if the action could be brought if any amount was due, nothing appears to have been due under the contract in any event. This contention is predicated upon the theory that the contract, by its terms, provides that the difference between the price of $18 per ton and the market price of iron should be adjusted at the termination of the contract, and, as the referee found as a fact that no difference existed between the mar-

ket price and $18 per ton, that, therefore, the plaintiff has been paid in full. If the appellant was right in its facts that the contract was one by the terms of which the difference between the price paid of $18 a ton and the market price should be adjusted at the termination of the contract, then, no difference appearing, no damages would result by reason of the breach. In this, however, the appellant seeks to take advantage of a mistake occurring in the drawing of the July agreement, in which the words "market price" were inserted instead of the words "contract price." No question could arise but that, had the July agreement said "contract price" instead of "market price," there would be no room for controversy in reference to the conclusions reached by the learned referee. Having, however, on satisfactory evidence, reached the conclusion that the insertion of the words "market price" was the result of a mistake, he was justified in awarding a judgment determining the rights of the parties according to the agreement entered into between them as really and actually made. This consideration of the mistake resulting from the insertion of the words "market price" instead of "contract price" presents the question mostly relied upon by the appellant, and upon the solution of which the judgment must stand or fall. The right to allow an amendment of the complaint, which was attempted upon the trial, so as to permit a reformation of the contract, and the exceptions taken to the evidence presented on the part of the plaintiff to prove the evidence of the mistake so as to make it a basis for reforming the contract, are the questions most pressed upon our attention by the appellant. It insists that the privilege granted of amending the complaint was improperly given, and that the testimony offered relative to the proceedings had before the arbitrator was irrelevant and incompetent, as were the negotiations which led, and were prior, to the July contract, all of which were admitted in evidence over the defendant's objection. By reference to the judgment in this case it will be seen that it has not been adjudged that the contract should be reformed. Regarding, therefore, the action as having been brought upon the original contract, and upon the facts stated in the complaint as it stood prior to the trial, it remains to be determined whether the objections taken to the admissibility of the evidence already referred to was error requiring a reversal of the judgment. We think that, whether the effect of the decision of Mr. Bullitt, the arbitrator, was to terminate the agreement of July, and restore the parties at once to their original rights and liabilities under the December contract, or to leave the July agreement in full force, merely determining in advance upon what basis final settlement should be made, in either case the defendant's repudiation of that decision and refusal to perform any more of its obligations until the plaintiff's assignor should consent to forego some of his legal rights gave the plaintiff's assignor an immediate right of action for the full value of the original or modified contract, as the case may be; the two values being in this case, and under the decision of the arbitrator, identical. If, however, in determining the theory upon which the plaintiff's action could be predicated, we leave out of consideration for the time being the effect of the modified agreement, whether repudiated or not, we think it will be found that it can be sustained by a pleading of the original contract. For breach of this a recovery could be had, unless some defense was interposed which would destroy its force and effect. This was substantially the view and position taken by the appellant in formulating the pleading which submitted the questions to the court for determination. The agreement of July was pleaded as an affirmative defense to the plaintiff's cause of action. It was therefore proper for the plaintiff to show any fact, such as want of consideration going to show its invalidity, or any fact such as fraud or mistake going to show that it was or ought to be made, in whole or in part, different from its form and effect as pleaded, and this would be clearly admissible by way of reply. It will be noticed that to the evidence offered as to the correction of the July agreement no objection, based on the state of the plead-

ings, was taken, nor do we think that any such objection would lie. What was awarded to the plaintiff's assignor was his rights under the original contract, and proof of the award under the July agreement and its repudiation was therefore competent and admissible by way of reply. In other words, the plaintiff having declared upon his contract, and the defendant having set up a modification of that contract, the plaintiff was entitled to reply by showing a restoration of the original contract after modification; and this, whether the restoration was the direct effect of the award as expressed by its terms, or the indirect effect through the termination or extinguishment by the award of the July agreement. We do not think, therefore. that any amendment of the complaint was necessary, and, although it appears to have been allowed, as stated, to conform the pleadings to the proof, as this error, if error it can be called, was not carried into force and effect by the judgment, it cannot be available for the purpose of reversing the judgment. Nearly all the objections to the rulings made by the learned referee were predicated upon the theory that the testimony was offered for the purpose of supporting the complaint as thus amended. But if we disregard such amendment, and view the case as though the same had not been made, then, as we have seen, the case is presented of a right predicated upon the original contract, the force and effect of which is sought to be destroyed by the modified agreement, and then by way of reply the plaintiff introduced evidence showing that by reason of the mistake made in the drafting of this modified agreement it was not entitled to the force and effect which the appellant in its defense sought to have attributed to it. As evidence to support a reply, the testimony objected to was clearly competent. There are some other exceptions which have been referred to upon the appellant's brief, but, after examination, we do not regard them as of sufficient importance to justify a reversal of a judgment such as this, which, by testimony sufficiently clear and satisfactory, establishes the plaintiff's right to recover the amount which has been adjudged by the referee. We are of opinion, therefore, that the judgment should be affirmed, with costs.

INGRAHAM, J., concurs.

VAN BRUNT, J. I dissent. I think it was wrong to admit evidence in respect to error in modification contract. Evidence of the latter could have been offered under general denial, and, because pleaded unnecessarily, the position of the parties is not changed.